Good morning, Your Honors. May it please the Court, Richard Grant, Braden Purcell, representing appellant Carol McIndoe, and other heirs of James McIndoe. You may proceed. This is one of several asbestos cases I see on calendar this morning. This is from a summary judgment from the Central District in favor of the defendants. There are several issues before the Court, and as you know, it's a de novo. The main point of plaintiffs of appellants throughout this proceeding is de novo on a summary judgment motion. If you take the bedrock law, if you take all the evidence and all the inferences therefrom, in the light most favorable in this case to appellant, the Court should reverse the lower court and decide that summary judgment should have been denied. Counsel, let's take the strict liability claim. You're arguing that a naval ship is a product within the meaning of the appropriate statute. Yes, Your Honor. The first issue is ship is a product. It's a difficult question. Ship is a product. It's certainly a product. The question is, is it a product for purposes of strict products liability? Judge Rebrano, in a long opinion in Mack, which was cited by all the parties, decided that the ship, a naval ship, is not a product. They seem pretty reasonable to me, so I think I would ask that you give me some help in understanding why you think it is a product. Basically, and I agree, my initial reaction is it's a naval ship. It can't be a product. You can't buy it on Amazon. You can't buy it on Amazon. You can't buy it at Target. That's pretty much covers everything, right? There's no aircraft carriers or a store to go to. The main question, as I put in my, then I'd like to move on to the other issues, as I put in my reply brief, in the Stark case and also in the Mack case, Judge Rebrano, the ship, a vessel has been considered in the past, in the Saratoga case where a vessel is and can be considered a product for purposes of strict liability. My point here is that it comes down to who designed the ship. So it's really not a question, yes, a ship can be a product for purposes of strict liability. The real question is who designed the ship. And if the government designed the ship, then defendants are immune because of the government contract or defense. So what I suggest is that it's an all-in-one issue. It's not, and I think Northrop Grumman, which is now Huntington Angles, and Bath Iron, if you just call them an assembler of parts, which is how Rebrano referred to it, he said, you know, this is not an easy issue. This is in the Mack case. I'm looking at it, and what I think is that you can't hold the Navy responsible for tens of thousands of disparate parts. What about the Mack v. General Electric case? Now, that's Eastern District, Pennsylvania. It's not binding on us, but pretty clear analysis on why a Navy ship is not a product. And that's what Judge Klossner ruled. And my answer to that is that if the Navy actually designed and had architectural plans for the ship, then, indeed, you can refer to the shipbuilder as a service provider or an assembler of parts, which is what Judge Rebrano said. My response is that we don't have that evidence here. The crucial factor in a footnote in Mack is, which where Judge Rebrano referred to the Stark opinion, is who designed the ship. And we get into that in the government contractor defense. So, yes. What's the evidence on that? The evidence of government contractors. So when we get to the government contractor defense, I submit there's really no evidence at all. There are no, we have in various cases asked shipbuilders, look it, you show us the contract and the military specifications set forth in the contract that says you have to use asbestos insulation in the ships. You show us that, we go away because that's government contractor defense. If the government specified, approved specifications saying we, you must put asbestos insulation on the ship, and you complied and put asbestos insulation on the ship, and then there's a third prong. Counsel, the footnote you're referring to in Mack is footnote 14. And it is inclusive of other things. There are other things that the Court was concerned about. That is not only whether who designed it, but whether it was custom built or mass produced. That goes to Judge Kaczynski's question about it not being available on eBay. It was not mass produced. It was custom built. And the district court seems to hold that if it's custom built, it's a one-off. It's not a product. Products are things that are generally available and for which the manufacturer is going to assume strict liability if it fails. A ship clearly built for the Department of Defense is going to be custom built. It's going to be custom built, although there's also going to be, in the destroyer's case, there's going to be several hundred of them in the aircraft carriers less. But it's not just a one-off. It's maybe several hundred off. It's the same plans. But once again, I would like to focus on did the government specify a species, whether it's strict products liability and if it's not a product for purposes of strict liability, it still leaves the negligence causes of action. And I think there are several issues there which this Court may wish to address, that the Ninth Circuit may want to weigh in on, and that is the other issues in the case. Well, one is government contractor, where there's nothing that says or mandates asbestos be placed on the insulation. The only thing we have here in one of this Court's cases, in Enray, Hawaii, which is cited in many instances all over the country. Counsel, I know that you have mentioned the government contractor defense a number of times, but that's not the basis for the district court's decision. Well, the basis of the district court's decision is ship is not a product for purposes of strict liability. For strict liability, but with respect to negligence. Moreover, with regard to negligence or strict liability, that there's no showing that Commander McIndoe was exposed to asbestos insulation that was original to the ship. Right. And then the next issue, which I think this Court may want to weigh in on, is what is the causation factor in the Ninth Circuit? What does Lindstrom, these are, of course, Sixth Circuit cases, Lindstrom and Stark, which many courts cite for the proposition that, looks like I'm almost done. Time for lunch. Let me quickly go through it. I won't have rebuttal. Let me quickly say there's nothing here. There's nothing in the evidence that shows that the government specified asbestos. There's plenty of evidence. Right. Then it all goes to the government contractor liability. That's not the basis the district court decided. The district court said your client hadn't shown that he was exposed to asbestos in the original ship. And you've got a number of problems there. And then second, he said even if he had been exposed, you haven't got any evidence of causation. My response to that is there's plenty of evidence from Stench and from Sappington that he and Mr. I, that Commander McIndoe was exposed to asbestos that was original to the ship. And if you look at the Exhibit 3 to Charlie I's deck, which shows that there's a letter from the Comptroller, which includes a letter from the Navy, that over the life of the ship, a ship, 30 to 50 percent of the asbestos installation remains on the ship at the end of its lifetime, which is 40 to 50 years. Right. Wasn't that because the letter was because that asbestos is largely inaccessible and therefore can't be replaced feasibly? No. I don't think there's any evidence that says that. What the evidence shows is that the asbestos was original, and the evidence shows by Dr. Rabin that this exposure, and here we go to Lindstrom and Stark. You don't need substantial exposure over a substantial period of time. That's incorrect. Even though the evidence here shows that he was exposed for that purpose, what you need is to show that there's a, what Stark says, actually, is that if you can show that there is a, it contributes to the risk of development of the disease, and that's the evidence that you have here. Your break time is up. May I ask you about the, I'm still in a sandy position on the evidence about the government contract of defense. They have a couple of expert declarations saying naval ships are obviously made to Navy specifications. A little thin, but let's say we, and you say, you call into question, and let's say we were to reverse on that, what would happen next? I mean, what more information would you have or could you obtain to put before a jury on this issue? Well, the government contract of defense, as you know, is an affirmative defense, and the Stout case says the burden of proof is on the defendants. So if this was reversed, what we're saying, this is a question of fact for the jury. Let Admiral Horn come in, let Heflin or Graham or Hewitt or McCaffrey, all their experts come in, and they can testify, but what they can't do in a summary judgment motion, which is set forth in our brief, is they can't decide the issue of fact. They can create the issue of fact, so it goes before the jury, and they can say, in our opinion, what they did is they reversed the government made me do it. That's the defense that's in Ray Hawaii says. The government made me do it. But they're saying, really, not the government said to do this, so we did it. They're saying, well, we did it, and if we did it and we passed the Navy test, they must have said that we should do it. Well, that's wrong, and that's a question of fact for the jury, Judge. Okay. Thank you. Thank you. We'll hear from ñ are you splitting time here? Yes. Good morning, Your Honor. Edward Hugo, Hugo Parker for Bath Ironworks. I'd like to take half of the time, five minutes, and I'd like to address my comment to the issue of Lindstrom v. liability, specifically exposure and causation, and leave the issue of government contractor defense and whether ñ Have you heard any questions on that issue today from us? Only the last ones. The last ones. With regard to the sufficiency of the evidence and why the motion for summary judgment was granted. And if the Court has no further inquiry on that, I'm going to give all of my time to my co-counsel. I thought we were mostly concerned about the government contractor liability. But why are we ñ I mean, it all comes down to whether or not the government did or did not. Good morning. Daniel Kelly of Tucker Ellis on behalf of Huntington Ingalls Incorporated, formerly known as Newport News Shipbuilding and Dry Dock Company. And I was ñ we split our time to start with, and my area was the ship is not a product primarily. And I think there are two steps to that question. If a ship is not a product, then a strict liability goes out. And I think that was discussed. It's in the briefs, and I believe we've covered that issue, that it's just not the same type of liability that you would be imposing on someone. What about the government contractor liability? The government contractor defense is really mostly asserted in the context of a product, when you're dealing with a product. It's interesting because the U.S. Supreme Court now is hearing briefing, and there's some briefs on it, in terms of sovereign immunity, which is a similar idea that if you're doing something that the government wants you to do, according to their plans, that you then stand in the shoes of the government. And so ñ but for purposes of the strict liability claims, you don't really get to the government contractor defense as directly until they've got the ñ We understand that, but let's say we're past strict liability. There's still liability for ñ There's still ñ On other basis, and the government contractor defense can be a defense to those claims. Just to be clear, Judge Klostner did not reach the government contractor defense. Exactly. And I think for ñ So this is something you've raised in your briefs. That's something that you argued before Judge Klostner, presumably, but he never reached this question. Yes. And primarily, I believe, because Judge Rubino looked at that, that there's a lot of factual issues in the government contractor defense that would potentially preclude a summary judgment on that ground. So we put it in the briefs because it was below, it was presented to Judge Klostner. But more importantly for us, in terms of causation and product identification, which is it's clear that just putting asbestos on a ship is not ñ doesn't result in ñ it's not negligence and it's not liability. It's not automatic liability just because the asbestos is there. The important thing is, is the asbestos the original asbestos that was there to start with? Was it disturbed in the presence of the person who was exposed to it? And therefore, do you have evidence of that causation? And one thing that we argued in our brief, and I apologize it wasn't cited specifically, and that was ñ it's in the excerpts of record, page 1078, is the deposition testimony from Brian Tench. That's the only witness that was on the Coral Sea. And my arguments are primarily for Coral Sea, but it applies to other Navy ships as well. Mr. Tench was on the Coral Sea with Captain McIndoe, and when asked about whether he could identify the lagging that he saw removed as being original to the ship, he said no, that would be speculation. I can't do that. And that's why the plaintiff and the appellant has presented evidence and opinions of experts that say if there's still some asbestos somewhere on the ship, therefore automatically you've got exposure and then you've got liability. The problem is, is that we have pointed out and demonstrated below that they cannot show that it was original equipment. They cannot show that what was actually being disturbed at the time that they have a witness there, describing what they saw Mr. McIndoe see, that that was original to the ship when the ship was originally built. So we don't need to get to the government contractor defense in terms of why it was on the ship. The question becomes, was it a dangerous condition at the time that Mr. McIndoe was in its presence, and was it really the original equipment, or was it something that had been replaced later? And the evidence that we presented with experts was that you cannot determine that, and it was admitted by their one witness who was on the ship with Mr. McIndoe that he could not identify it either. He admitted it was pure speculation. So that's why the fact that someone can say he was on a ship and there was asbestos on the ship, that doesn't connect the dots. I'm not getting it. If the ship is built with asbestos in it, right, there's no doubt that it was, right? Right. The insulation on the ship was asbestos. Asbestos. It was built with asbestos. And your point is this is how many years later now? Fourteen years. And the argument is they have to prove that some of the asbestos is still around? No, they have to prove that the asbestos that fibers came out of that then were inhaled by the decedent were from materials that were put on the ship by the builder when we reviewed that. Do you have any doubt that if you build a ship with asbestos insulation, there's still plenty of asbestos on that ship 14 years later? Right, right. But asbestos on a ship is not a defect. Why isn't it an issue for the jury to decide whether or not that asbestos clearly was put on the ship, was clearly used on the ship, and is still there a mere 14 years is not a very long time in the life of a ship. So why isn't that the kind of thing that's a tribal issue of fact for the jury? Primarily because the evidence submitted below were that there's a number of overhauls and work that was done on the ship that replaces the parts. And that's why we get a good… But you're not going to say that all of the asbestos originally put on the ship was replaced in the 14 years? No. No, not all of it, but the important… Why isn't this an issue of fact? Because there's no evidence that what was the actual exposure. First of all, there's no quantification of that exposure, and there's no evidence that what was actually being dealt with was insulation, which is not manufactured by Newport News. But the plaintiff has to show… How would they go about proving whether this asbestos was the original asbestos that was put on the ship or more asbestos was added later? It strikes me that's the kind of thing that juries decide. Well, Judge Klausner, in looking at the evidence, has to first find that there is sufficient evidence that a jury can actually consider rather than speculation. If they had an expert… How about they built a ship with a bunch of asbestos in it? Asbestos gets loose. It's sort of like a building built with asbestos. And that's… Nobody knows. If we told you, hey, this building was built with asbestos and it's still on the ceiling, you'd probably run out of here pretty quick. It's not. This was all… This was all retrofitted. How do we know? Your Honor, I… Well, because Justice Kennedy himself was in charge. I see. And he was a member of our court, and he was very careful about that kind of thing. So you are safe, sir. Thank you. Not in your case, just in your health. And actually, Your Honor, in a lot of these cases, too, there is an issue of the bare metal defense, which is if you're not the one who supplied the actual product that was involved, you're not responsible. So the fact that there are ships that are built with asbestos, which we all know that there are plenty of ships with asbestos that are not hazardous until it's disturbed, and it's important that the evidence that's presented below had to demonstrate that they could make a connection. And if it's an earlier ship or an expert that has a background with that ship can talk… I'm singularly impressed. I don't know if I can speak for my colleagues, but I'm singularly impressed. You're making a jury argument to me. You know, they put a ship out there with plenty of asbestos in it. It's still riding the seas with a bunch of asbestos in it. A jury can figure out whether, you know, this asbestos came from… But I have asked you a question, which you've been sort of ducking, about the contract of defense. You know, and I was promised by your colleague that you would talk about it, and you're ducking it again. I apologize. So now how about answering that question? All right. The government contract of defense, the evidence presented by the experts below, demonstrated that the ships were built to specifications, built to contract. What do they know? And that included… What do the experts know? Do they have plans? Do they have… Is there a request for proposals or a bidding document? Is there stuff like that? The experts are retired Navy personnel who actually worked at the shipyard and had worked with ships for a number of years. So they had documents to look at? Yes. They had the actual bidding documents? I don't know if they had bidding documents, but they did have some contractual documents in the general sense and described the Navy process for procurement, which includes a contract and a back and forth. So they were familiar with the general procurement process. And I don't think, I mean, in Judge Rebrano and other judges that have looked at this, there's no… It's an affirmative defense, right? The government contract of defense. You have the burden of showing this ship was built to the Navy specifications. And when you tell me, oh, there's a back and forth and this and that, that doesn't sound to me like it was built to Navy specifications. Navy specifications means, you know, here we are like we're building a courthouse, first street to district court. You know, we have plans, and we'll put them out for bid, and people bid on specific plans for a specific building built a specific way. They didn't come around and say, well, you know, we think it would be nicer if it were glass or we think it would be nicer if it were taller rather than shorter. They are building it to those specifications. And do you know why? Because Congress were very insistent on that. So why, what is there here to say that this was not done exactly the same way? This was done that way or not done that way? The declarations of the defense experts do describe the procurement process, including the fact that the insulation materials are on a qualified products list that is specifically asbestos. So there's no question that they could not use something. They had to use asbestos insulation on the ships. That's in the declarations, and there's not all of the bidding documents are not attached to the declarations, but the experts have demonstrated sufficient expertise to be able to opine on that. Do they say that they've looked at the bidding documents for this ship? They say that they've looked at all of the available ships. The Coral Sea was built in 1947 was when it was commissioned. There are not a lot of documents left, and they did look at all of the documents that were left from Newport News with respect to the Coral Sea. There are not a lot of documents around anymore. So some of this has to come from archives, and some of this is just from their experience with ships and how Navy ships are built. You're talking in circles. Did they look at the procurement documents for the Coral Sea? I'm saying there's a very limited amount of documents. They looked at all of those, yes. That's in the declarations. They had looked at the Coral Sea documents. There's just not a lot of them around. They looked at everything that was available. But in the first instance, the plaintiff has to demonstrate that there is a problem. It sounds to me like a long-form no, like they didn't have anything to look at. They looked at everything they could, but there wasn't anything there, so they're taking a guess. No, there's approximately 22 pages from the Coral Sea that include a contract. So there is a portion of a contract that indicates it was built for the United States. There's no question about that. It was built for the United States Navy. Does it have specifications? In those documents, there are no specifications. Is there a reference to specifications? Is there a reference to specifications? There is a reference to specifications. And what does it say? It's a general reference to other documents and other numbered specifications. I mean, the process includes a very large number of specifications. The documents that are specific to the Coral Sea say that it will be done pursuant to specifications. So it uses the word. It doesn't have each one listed out. But I still believe that in the first instance, the plaintiff has to demonstrate before you get to the defense that it was a product that Newport News put on that ship and not just that it was there somewhere, but that it was there where the plaintiff was and that that's where the exposure happened. Thank you. Thank you. Okay. Case resolved. You will stand submitted.
judges: Kozinski, O'scannlain, Bybee